UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARN LIGHT ELECTRIC COMPANY, LLC
a Florida limited liability company,

    Plaintiff,                             Case No. 8:25-cv-204-WFJ-LSG

vs.

BARNLIGHTDEALS.COM, an Internet domain name
and, Wang Xuemei, an individual,

    Defendants.
_____/

## ORDER GRANTING
## PLAINTIFF'S MOTION TO CONVERT TRO
## INTO PRELIMINARY INJUNCTION AND TO UNSEAL THE CASE

This is a trademark infringement and counterfeiting dispute wherein Plaintiff Barn Light Electric Company, LLC moves to convert the Court's January 30, 2025, *Ex Parte* Temporary Restraining Order, (Doc. 13) ("the TRO"), into a preliminary injunction and unseal the case. (Doc. 20.) The Court held a hearing on February 13, 2025, to hear argument on Plaintiff's requested preliminary injunction and no Defendant appeared. The Court having reviewed Plaintiff's Motion, heard argument of counsel, and for the reasons stated on the record of the February 13 hearing as well as those set forth below, Plaintiff's Motion (Doc. 20) is **GRANTED**.

80027263;1

## BACKGROUND

As noted, this is an action for trademark counterfeiting and infringement of Plaintiff's federally-registered trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 15 U.S.C. § 1116(d), false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for common law unfair competition as well as common law trademark infringement. Plaintiff is an American company manufacturing and offering for sale high quality, vintage light fixtures and other decorative wares. (Doc. 12-1 at ¶ 4.) It advertises its products worldwide at the domain: www.barnlight.com. (Doc. 12-2 at ¶ 3.) Plaintiff brands and uses a number of marks in connection with various lines of light fixtures including, for example, AERO, BRIDGEPORT, STERLING and FIRE CHIEF. (Doc. 12-1 at ¶ 4.) It also owns numerous federal registrations for the BARN LIGHT ELECTRIC marks, including U.S. Trademark Reg. Nos. 5,298,953 and 5,707,278 (for BARN LIGHT ELECTRIC COMPANY®); 4,703,116, 4,703,117 and 4,703,118, 4,722,667, (for BARN LIGHT ELECTRIC®). (*Id.*) Together, the marks identified in this paragraph are referred to as the "BARN LIGHT ELECTRIC marks."

Defendants own or operate www.barnlightdeals.com (the "Counterfeit Website"). (Doc. 12-1 at ¶ 5.) Defendants, without permission, use the BARN LIGHT ELECTRIC marks on the Counterfeit Website to advertise, offer for

2

sale, and sell what Plaintiff determined to be counterfeits, infringements, reproductions, or colorable imitations of the BARN LIGHT ELECTRIC marks. (*Id.* at ¶¶ 5, 16.) For example, U.S. Trademark Reg. No. 5,707,278 covers the following trademark:



(*Id.* at ¶ 6.) Defendants display the BARN LIGHT ELECTRIC marks on the home page of their Counterfeit Website and in the description of their products:



3

(*Id.* at ¶ 7.)

On January 24, 2025, Plaintiff filed its Complaint along with a motion to seal the case. (Docs. 1, 2.) Plaintiff moved for an order permitting alternative service and an *ex parte* temporary restraining order on January 29, 2025. (Docs. 11, 12.) The Court granted Plaintiff's motions to seal, for alternative service, and for *ex parte* injunctive relief on January 30, 2025. (Doc. 13.) The TRO also granted Plaintiff leave to serve nonparty discovery. (*Id.* at 13–14, ¶ 8.) The Court scheduled a hearing for February 13, 2025, via Zoom, at which time Defendants and any persons affected by the TRO were provided an opportunity to challenge the appropriateness of the TRO, and argument on Plaintiff's requested preliminary injunction was heard. (*Id.* at 14, ¶ 9.)

Plaintiff served nonparty PayPal Holdings, Inc. with discovery seeking Defendants' financial account and contact information on January 30, 2025. (Doc. 20 at 15–16, ¶ 4.) On February 3, PayPal responded that it was unable to locate any records associated with Defendants Xuemei or the Counterfeit Website's domain. (*Id.* at ¶ 5 & Ex. 1.)[1] That same day, Plaintiff served Defendants' network services solutions provider, Cloudflare, Inc., and domain hosting provider, Name.com with similar nonparty discovery. (*Id.* at 8.)

---

[1] Plaintiff's earlier filings contain a scrivener's error whereby Defendant Xuemei's name is spelled "Xuemej." Nonparty discovery indicates the proper spelling is "Xuemei."

Pursuant to the TRO, Plaintiff filed a $10,000 bond on February 5, 2025. (Doc. 18.)

Also pursuant to the TRO, on February 6, 2025, Name.com transferred the Counterfeit Website's domain to a trust account maintained by Plaintiff's counsel, through Name.com, and disabled the Counterfeit Website. (Doc. 20 at 17, ¶ 9.) On February 11, Plaintiff sent Name.com a letter and requested that Name.com forward the letter to the email Defendants used when registering the Counterfeit Website with Name.com. (*Id.* at ¶ 11 & Ex. 3.) That letter explained the nature of this action, the *ex parte* relief granted, and provided information about the February 13, 2025, hearing. (*Id.* at ¶ 12 & Ex. 3.) It also contained a URL at which Defendants could view and download copies of the Complaint, the TRO motion, and the TRO. (*Id.*)

On February 12, 2025, Plaintiff sent Name.com a second letter, again requesting that Name.com forward the letter to Defendants. (Doc. 20 at ¶ 13 & Ex. 4.) That letter contained a URL to the website Plaintiff's counsel specifically created for providing Defendants notice and to which Plaintiff's counsel uploaded pertinent Court filings. (*Id.*) Plaintiff also uploaded copies of the notice of rescheduling (Doc. 19) and its February 12, 2025, Motion to Convert TRO to the notice website. (Doc. 20 at ¶ 14.)[2]

---

[2] The February 13, 2025, hearing was reschedule as to time only. (Doc. 19.)

Only Plaintiff's counsel attended the February 13, 2025, hearing. (*See* Doc. 21.) The Court addressed the status of the case, and granted Plaintiff's Motion, noting that a formal order would follow. (*Id.* & Doc. 22.) As set forth on the record of the February 13, 2025, hearing, and in Plaintiff's Motion (Doc. 20), the Court finds that all four factors necessary for the issuance of a preliminary injunction weigh in Plaintiff's favor.

## LEGAL STANDARD

The standard to obtain a preliminary injunction is the same as to obtain a temporary restraining order insofar as a movant must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

## CONCLUSIONS OF LAW

To begin, there is a strong probability of Plaintiff proving at trial that it is the owner of a valid trademark, (*see, e.g.*, Doc. 12-1 at ¶ 4), which Defendants are using without authorization in a manner that confuses or deceives consumers. *See* 15 U.S.C. § 1114(1)(a); *Chanel v. Reznik*, No. 07-cv-60493, 2007

6

WL 9710719, at *2 (S.D. Fla. Nov. 21, 2007) ("Thus, to prevail, a plaintiff must demonstrate (1) that its mark has priority and (2) that the defendant's mark is likely to cause consumer confusion.").

Next, Plaintiff is likely to suffer immediate and irreparable injury absent a preliminary injunction. "A wrong for which the law can provide no remedy, trademark infringement 'by its nature causes irreparable harm.'" *Gainesville Coins, Inc. v. Oversee Domain Mgmt., LLC*, No. 8:12-CV-2607-T-23TGW, 2012 WL 12884446, at *2 (M.D. Fla. Nov. 20, 2012) (quoting *Processed Plastic Co. v. Warner Comms.*, 675 F.2d 852, 858 (7th Cir. 1982)); *see also Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("[C]ounterfeits, by their very nature, cause confusion."). Plaintiff's CIO, Colin Jones, for example, attests that "at least 3 individuals have contacted Barn Light Electric regarding this fraud, confused over the affiliation between Barn Light Electric and the Counterfeit Website." (Doc. 12-2 at ¶ 9.)

For similar reasons, the balance of potential harm to Defendants in restraining their offering for sale and selling of infringing goods is far outweighed by the potential harm to Barn Light Electric's reputation and goodwill. "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." *Ferrellgas Partners, L.P. v. Barrow*, 143 Fed. Appx. 180, 190 (11th Cir. 2005) (citing *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998)).

Finally, the "public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products." *Gucci Am., Inc. v. 9goods.co*, No. 13-20146-CIV, 2013 WL 12101119, at *7 (S.D. Fla. Feb. 6, 2013). "The weight of authority around the country appears to favor the granting of . . . seizure orders in trademark counterfeiting cases, where fake versions of well-known brands are deliberately passed off to the public as the genuine article." *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F. Supp. 248, 249 (S.D. Fla. 1982) (collecting cases); *see also Abercrombie & Fitch Trading Co. v. 21cnfashion.com*, No. 1:12-CV-20390-CIV, 2012 WL 12868165, at *3 (S.D. Fla. May 1, 2012) ("The public interest favors issuance of [injunctive relief] in order to protect Plaintiff's trademark interests and to protect the public from being defrauded by the palming off of counterfeit goods as genuine goods of the Plaintiff."). Thus, the public interest favors issuance of a preliminary injunction in Plaintiff's favor.

Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sale of goods bearing counterfeits and infringements of the Barn Light Electric marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits .

. . is an equitable remedy subject to the principles of equity.'")). Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)). In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained. (*See*, *e.g.*, Doc. 12-2 at ¶ 20; Doc. 12-3 at ¶ 11.)

Accordingly, it is hereby

**ORDERED and ADJUDGED** that Plaintiff's Motion to Convert TRO into Preliminary Injunction and to Unseal Case (Doc. 20) is **GRANTED** as follows:

1. Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or in participation with any of the Defendants having notice of this Order are restrained and enjoined until further order of this Court from:

    a. Maintaining, operating, modifying, redirecting, transferring, disabling, or canceling the offending domain name associated with the Counterfeit Website unless such transfer is to a holding account with a Registrar of Plaintiff's choosing for Plaintiff to

9

      maintain the Counterfeit Website in trust and in furtherance of providing notice to Defendants of this dispute;

b. Manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the BARN LIGHT ELECTRIC marks or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff;

c. Using the BARN LIGHT ELECTRIC marks in any manner prohibited by law; and

d. Transferring, destroying, concealing, or in any way altering assets resulting from Defendants' operation of the Counterfeit Website or use of the BARN LIGHT ELECTRIC marks or evidence relating to same, including but not limited to all computer files relating to the use of the Counterfeit Website.

2. The Counterfeit Website's domain shall remain in a trust account maintained by Plaintiff's counsel, through Name.com, and shall remain inaccessible pending further Order of the Court.

3. Upon receipt of this Order, Defendants and any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms ("Third Party Provider") who are providing services for Defendants in connection with the Counterfeit Website, including but not limited to PayPal Holdings, Inc., shall within five (5) business days:

      a. Restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for the Defendants' benefit or to be transferred into the Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. No funds restrained by

10

this Order shall be transferred or surrendered by any Third Party Provider for any purpose (other than pursuant to a chargeback made pursuant to a security interest in the funds) without the express authorization of this Court.

4. This Order shall apply to the domain names, associated ecommerce stores, websites, or financial accounts which Defendants are using for the purpose of counterfeiting and infringing the BARN LIGHT ELECTRIC marks at issue in this dispute.

5. Any Defendant or party subject to this Order may petition the Court to modify the asset restraint set forth herein, if appropriate.

6. This Order shall remain in effect during the pendency of this action, or until such further dates as set by the Court.

7. Plaintiff is **directed** to maintain its previously posted bond of $10,000 until further order of the Court.

8. The Clerk of Court is **directed** to **unseal** the file.

**DONE** and **ORDERED** in Tampa, Florida, this 14th day of February, 2025.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

80027263;1